## DILLON v. CITY OF CLEVELAND ET AL.

*Municipal corporations—Referendum—Stop-gap zoning ordinance—Sponsors of referendum petition not responsible for irregularities invalidating signatures—Cleveland Municipal Charter—Voters' referendum right not jeopardized unless proceedings inherently and substantively fraudulent—Referendum petition may be amended, when not permeated with fraud—Defective legal document may be amended, unless fraud obliterates existence—Cleveland Charter provisions complied with as to amending insufficient referendum petition—Political functions of board of elections not controlled by courts, when.*

1. Where record failed to show any evidence of bad faith on part of committee for petitioners, or on part of Cleveland real estate board sponsoring petition for referendum election on stop-gap zoning ordinance, authorized by Cleveland City Charter, but showed that they acted in good faith, committee and board are not to be held for any irregularities that might invalidate portion of signatures to petition, especially where they were in no way responsible for irregularities complained of.

2. Under Cleveland City Charter, granting right of referendum to voters on ordinance, voter has right to have ordinance referred to him for approval or disapproval, and unless proceedings for reference are inherently and substantively tainted with fraud, voters are not to be jeopardized in their rights under the charter because of mere irregularities or invalidities for which committee for petitioners are not responsible.

3. Under Cleveland City Charter, providing for right of referendum on ordinance, if petition retains substance, and provisions of law are substantially complied with, amendment can be made to petition as provided by charter, but when petition is so permeated with fraud that there is nothing good left in it, amendment would be fruitless and of no avail.

4. Under Cleveland City Charter, providing for right of referendum on city ordinance, sponsors of petition for ref-

erendum, free of any guilt of fraud, cannot be held responsible unless fraud is so infectious that it destroys good part as well as bad part of petition.

5. In absence of fraud, a defect in legal document, of which judicial cognizance is taken, can always be amended in interests of substantial justice, since untinctured with degree of fraud that wipes instrument from existence.

6. In action to enjoin referendum election in city of Cleveland on stop-gap zoning ordinance, record showing filing of petition for referendum and of amendment to petition within 10 days after clerk found petition was insufficient, that petition was thereafter certified as sufficient by clerk, and that board of deputy state supervisors of elections ordered an election, showed compliance with Cleveland City Charter, providing for referendum so as to make clerk's acts binding in law.

7. Board of deputy state supervisors and inspectors of elections are to be given free rein, except on showing of fraud or gross abuse of discretion, and have political functions which are sovereign in their nature and which cannot be interfered with by courts.

(Decided July 15, 1927.)

APPEAL: Court of Appeals for Cuyahoga county.

*Messrs. Gordon & Gordon,* for plaintiff.

*Mr. Carl F. Shuler,* director of law, and *Mr. E. C. Stanton,* prosecuting attorney, for defendants.

SULLIVAN, P. J. This cause is here on appeal from the court of common pleas, wherein a final order was made against the appellant, Edmund B. Dillon, and in favor of the defendants, in an action wherein it was sought by the plaintiff, by the injunctive process, to prevent a referendum election in the city of Cleveland upon what is known as the "Stop-Gap Zoning Ordinance," which became effective December 26, 1926, by the action of the

city council and publication as required by law. The ordinance was intended to constitute an amendment to the Building Code of the city of Cleveland, and the prayer of the petition is to prevent a referendum election under the provisions of the charter of the city, and to restrict the issuing of building permits for the construction of buildings in what is known as "Stop-Gaps," lining the highways in different portions of the municipality.

In this court, under the statute, a temporary restraining order upon appeal was issued, and during its pendency a referee was appointed to take evidence and make findings of facts and conclusions of law. The immediate question is upon the exceptions to the report of the referee, who finds in favor of the appellees and against the appellant, and thus, after the overruling of a motion for a new trial by the referee, a proper procedure under the statutes, the cause is here upon the report of the referee, under exceptions, for hearing as upon appeal in this court.

The charter of the city of Cleveland contains a provision for the right of referendum by the voters upon an ordinance passed by the city council, and certain other provisions relate to the procedure for such an election, and among them is one that the clerk of the city council shall determine whether the petition is signed by a sufficient number of electors, and that if the clerk finds the petition insufficient it may be amended by filing a supplementary petition any time within ten days after the making of a certificate of insufficiency by the clerk. The foregoing is practically the exact language of the provisions of the charter in this respect.

Upon this ordinance a petition for a referendum

was filed certifying 5,402 valid signatures, which would be 50 per cent. of the number required. Names upon the petition were discarded for various reasons, among them that the marks were in lead pencil, that the signers were not electors, and that some of the signatures were believed to be fraudulent. There is credible evidence in the record that there was no certainty in every case of the discarding of signatures by the clerk, and it is quite clear that in some instances there were valid signatures that were rejected.

Within ten days after the clerk found the petition insufficient, an amendment to the petition was filed, containing about 19,000 names, of which it appears that at least 18,000 were legitimate and valid. It thus appears by the record that a referendum election had been petitioned for by something less than 24,000 electors, more than twice the number required; that the city clerk had certified the petition as sufficient; and that the board of deputy state supervisors and inspectors of elections of Cuyahoga county, Ohio, claimed that it thereupon became compulsory, under the law, to put the question upon the ballot at the next regular election, which would be November, 1927. Subsequently, the common pleas court granted a restraining order, and upon final hearing, as above noted, the prayer of the petition for injunctive relief was denied. Thus the cause is here upon the report of the referee, finding the facts and law as adjudged by the court of common pleas.

The appellant, through able counsel, as a foundation for his right to the relief prayed for, urged the proposition that the charter provisions controlling the initiative and referendum are in conflict with

the Constitution of Ohio and the statutes relating thereto, and are, therefore, null and void; that the original petition was permeated with fraud, forgery, and perjury, and that it was insufficient in law to be considered a petition upon which an amendment might be predicated. Thus the claim is made that there was no petition at all within the meaning of the term as used by the charter, and as required by the law; that the city clerk neglected to notify the committee of petitioners according to the provisions of the charter, for the purpose of affording them the time prescribed by the charter to procure additional names; that the city clerk refused to certify the amended petition to the city council within the period fixed by law, to-wit, five days; that the certificate of the city clerk is proof that the official did not perform his legal duty under the charter, and hence the certificate had an infirmity; and, finally, it is claimed that the referendum election was unlawful, fraudulent in its inception, and promoted wholly and solely for the purpose of procuring a suspension of the ordinance.

In examining the record as to fraud, we do not find any evidence of bad faith on the part of the committee for the petitioners, or on the part of the Cleveland real estate board, which body, it is charged, sponsored the circulation of the petition, but, on the contrary, we find that both constituencies and the secretary of the Cleveland real estate board, as far as they were concerned, acted in good faith, and under the authorities they are not to be held for any irregularities that might invalidate a portion of the signatures to the petition, especially when they themselves have clean hands and are

not in any manner responsible, even for the irregularities complained of.

The real issue is the right of the voter to have the ordinance referred to him under the provisions of the charter for his approval or disapproval, and unless inherently and substantively the proceedings for reference, under the provisions of the charter, are tainted with fraud, the thousands of electors are not jeopardized in their rights under the charter because of mere irregularities or invalidities for which the committees for the petitioners are not sponsors or responsible.

It was decided by this court, Judges Allread, Sayre, and Middleton sitting, in the case of *Barry* v. *City of Cleveland, post,* 362, 160 N. E., 96, that this court cannot subscribe to the doctrine that the rights of the electorate are to be jeopardized because elements of fraud creep into the movement for a referendum under the provisions of the charter. There is nothing in the city charter which makes the committee responsible for irregularity in the petition.

It is laid down in *Cincinnati Traction Co.* v. *Ruthman,* 85 Ohio St., 62, 70, 96 N. E., 1019, Ann. Cas. 1913A, 911, that it is a rule, universal in its nature, that, where a party prosecuting a right which he has under the law fails to attain it because of the neglect or misconduct of an officer charged with public duty, the law does not permit the diligent party to suffer detriment by reason of such neglect.

But this case is entirely different than the case upon which the court was speaking in *Barry* v. *Cleveland, supra,* for the reason that in no manner whatsoever does the charge of fraud, actual or constructive, taint the skirts of the committee for

the petitioners or the Cleveland real estate board, or of its secretary or other officers, and consequently we have nothing to deal with here of a substantive nature that can be characterized as fraud.

Irregularities are bound to arise, and the originators of the project for referendum may be entirely innocent. Fraud may be practiced of which they may be innocent, but, unless the fraud is so infectious or contagious that it destroys the good part as well as the bad part of a petition for a referendum, the sponsors, free of any guilt of fraud, cannot be held liable or responsible, and if the structure retains its substance, and the provisions of the law relating thereto are substantially complied with, we are unanimous in our belief that an amendment under the provisions of the charter can properly and legally be made, and it is only when the structure is so permeated with fraud that there is nothing good left in it that an amendment would be fruitless and of no avail.

There is one proposition of law that we think is universal and ancient, and that is that in the absence of fraud a defect in a legal document, of which judicial cognizance is to be taken, can always be amended in the interests of substantial justice, for it is untinctured with that degree of fraud that wipes it from existence.

From an examination of the provisions of the charter relating to the question of time, upon which the clerk officially acted, with respect to the petitions for referendum and the amendments thereto, we are of the opinion that the record shows, under all the facts and circumstances of the case, such a compliance with the provisions as makes his acts and conduct binding in law.

So far as the board of deputy state supervisors and inspectors of elections of Cuyahoga county, Ohio, is concerned, we are not unmindful of the unanimous holdings that give free rein to this body, except upon a showing of fraud or a gross abuse of discretion, and we see nothing in the record in this case that connects that body with either one or the other. The Supreme Court has time and again declared that this board has political functions which are sovereign in their nature, and which cannot be interfered with even by courts.

In *Pfeifer* v. *Graves,* 88 Ohio St., 473, on pages 487 and 488 (104 N. E., 529, 533), we read:

"We cannot restrain an agent of the executive department from the exercise of functions within the general scope of the authority conferred by the people on that department of government, unless the act is clearly forbidden by the organic law of the state, especially where the act is merely preparatory to the direct exercise of the sovereign power of the people to legislate for themselves * * *. In a clear case * * * we may enjoin execution of the law, for the protection of the rights of person or property guaranteed by the Constitution. This is not such a case; no private rights of persons or property are in jeopardy, and there is no law or semblance thereof complained of. We are simply asked to regulate the affairs of another branch of government, in deference to the general welfare, in a matter quite outside and independent of our authority. We are asked to prevent the people from exercising the initiative, upon a quizzical interpretation of a single word in their own letter of authority to their secretary of state."

After an examination of the remaining grounds

of complaint, it is our conclusion that they are not well founded.

It is the unanimous judgment of the court that there is no substantial evidence in the record with respect to either acts of omission or commission, relating to procedure under the city charter, which forfeits the rights of the electors to a referendum on the ordinance in question on the day of election.

Holding these views, the exceptions to the report of the referee are overruled. The report of the referee will be confirmed, the petition dismissed, the prayer for relief denied, and judgment will be entered and rendered accordingly.

*Decree for defendants.*

Vickery and Levine, JJ., concur.